# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIAN ROSS,<br><br>        Plaintiff,<br><br>v.<br><br>BENCHLING, INC.,<br><br>        Defendant. | Civil Action No.: 3:25-cv-30158-KAR<br><br>Judge Katherine A. Robertson |

### MEMORANDUM OF LAW IN SUPPORT OF BENCHLING'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO PARTIALLY DISMISS THE COMPLAINT AND TO CONSOLIDATE

Defendant Benchling, Inc. ("Benchling"), by and through its undersigned counsel, hereby respectfully submits this memorandum of law in support of its motion: (i) compelling Plaintiff Julian Ross ("Plaintiff") to arbitrate all claims in his Complaint (ECF No. 1) ("Complaint") pursuant to the Federal Arbitration Act ("FAA") and the Massachusetts Uniform Arbitration Act ("UAA"); or, in the alternative, (ii) dismissing Counts V–VI for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and (iii) consolidating Civil Action No. 3:25-cv-30176 with the instant action pursuant to Fed. R. Civ. P. 42(a)(2) (the "Motion").

### PRELIMINARY STATEMENT

Plaintiff's Complaint is procedurally and substantively deficient.

Plaintiff commenced this action in blatant disregard of the clear and unambiguous Arbitration Agreement to which he knowingly and voluntarily agreed. As part of Plaintiff's employment with Benchling, Plaintiff entered into a binding arbitration agreement in which he agreed to arbitrate "all claims . . . arising out of, related to or connected with [Plaintiff's] employment with [Benchling]." Plaintiff's claims – all predicated on his employment with

Benchling – fall squarely within the Arbitration Agreement's purview, and his claims must proceed to arbitration.

Even if this Court declines to compel arbitration, Plaintiff's Electronic Communications Privacy Act and Stored Communications Act claims (Counts V and VI) summarily fail. The claims lack the requisite factual predicates and simply parrot the statutory language, rendering them conclusory and ripe for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

Beyond that, Plaintiff's Complaint is a near carbon copy of the complaint Plaintiff brings against Benchling in Civil Action No. 3:25-cv-30176, and this Court must consolidate the cases. Both actions name the same parties, arise from the same operative facts, and advance nearly identical theories of discrimination, retaliation, and invasion of privacy. Allowing the two cases to proceed separately would be inefficient, duplicative, and fundamentally inconsistent with the principles of judicial economy. Indeed, Plaintiff concedes the actions arise from "the same facts," cementing the necessity and propriety of consolidation under Fed. R. Civ. P. 42(a).

For these reasons and those set forth in greater detail herein, this Court should compel arbitration and stay this lawsuit. Should this Court decline to compel arbitration, it should, at a minimum, dismiss Plaintiff's implausible claims and consolidate Plaintiff's duplicative lawsuits.

**RELEVANT FACTS**

Plaintiff alleges he resides in Massachusetts, and he performed services for Benchling as a Sales Development Representative from approximately June 21, 2021 to September 15, 2022. (Compl., ¶¶ 5, 7, 26; Benchling Decl., ¶ 5, attached hereto as Exhibit 1). Benchling is a Delaware corporation, maintains its principal place of business in California, and does business throughout the United States. (Compl., ¶ 6; Benchling Decl., ¶ 4).

In consideration for his employment at Benchling, on May 12, 2021, Plaintiff executed a binding Arbitration Agreement (the "Arbitration Agreement," or the "Agreement"). (Benchling Decl., ¶¶ 6, 8, Ex. A). By its express terms, the Agreement requires Plaintiff "submit to mandatory binding arbitration any dispute, claim or controversy arising out of or relating to [Plaintiff's] employment with [Benchling]." (Benchling Decl., Ex. A).

In direct contravention to the Arbitration Agreement, on September 2, 2025, Plaintiff commenced two lawsuits against Benchling – the instant action (the "Federal Court Action") as well as an action in the Commonwealth of Massachusetts, Hampshire County Superior Court (the "State Court Action") (together, the "Actions"). (*See* Compl.; Benchling Decl., ¶¶ 9–10, Ex. B). Between the Actions, Plaintiff alleges fourteen overlapping claims – all stemming from his employment with Benchling.[1] (*See* Compl.; Benchling Decl., Ex. B). On October 9, 2025, Benchling properly removed the State Court Action under 28 U.S.C. § 1332 to the District of Massachusetts, where it remains pending. (Benchling Decl., ¶ 10, Ex. C).

Benchling now seeks to enforce the clear and unambiguous terms of the Arbitration Agreement by moving to (i) to compel arbitration and stay the Federal Court Action; or, in the alternative, to (ii) dismiss Counts V and VI in the Federal Court Action for failure to state a legally viable cause of action, and (iii) consolidate the Federal and State Court Actions. (*See* Motion).[2]

---

[1] In the Federal Court Action, Plaintiff alleges: discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, 12203 (Counts I–II); interference and retaliation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1)–(2) (Counts III–IV); violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2511, 2520 (Count V); and violation of the Stored Communications Act ("STC"), 18 U.S.C. §§ 2701–2707 (Count VI). (Compl.). In the State Court Action, Plaintiff alleges the state equivalents: disability discrimination and retaliation under the Massachusetts Fair Employment Practices Act ("MFEPA"), Mass. Gen. Laws ch. 151B, § 4(4), (16) (Counts I–II); retaliation under the Massachusetts Paid Family and Medical Leave Act ("MPFMLA"), Mass. Gen. Laws ch. 175M, § 9(d) (Count III); wrongful termination in violation of public policy (Count IV); promissory estoppel (Count V); violation of the Massachusetts Wiretap Act ("MWA"), Mass. Gen. Laws ch. 272 § 99 (Count VI); invasion of privacy under Mass. Gen. Laws ch. 214, § 1B (Count VII); and intentional infliction of emotional distress (Count VIII). (Benchling Decl., Ex. B).

[2] Just as in this action, Benchling moves to compel arbitration or, in the alternative, to partially dismiss the State Court Action. (*See* Civil Action No. 3:25-cv-30176, ECF. No. 4).

# ARGUMENT

I. **PLAINTIFF MUST ARBITRATE ALL CLAIMS IN THE COMPLAINT PURSUANT TO THE ARBITRATION AGREEMENT**

   A. **The FAA and UAA Govern the Arbitration Agreement**

Plaintiff signed a valid and enforceable Arbitration Agreement, and his claims must proceed to arbitration. "The FAA establishes 'a liberal federal policy favoring arbitration' and reflects 'the fundamental principle that arbitration is a matter of contract.'" *Cunningham v. Lyft, Inc.*, 17 F.4th 244, 249 (1st Cir. 2021) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Specifically, the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA thus creates an "enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022).

The FAA applies to arbitration agreements in employment contracts where, as here, the agreement "evidenc[es] a transaction involving [interstate] commerce." 9 U.S.C. § 2. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding the FAA only exempts employment contracts of transportation workers, not all employment contracts); *Salvi v. TRW Auto. U.S. LLC*, No. CIV.A. 11-40085-FDS, 2012 WL 274755, at *3 (D. Mass. Jan. 30, 2012) (noting the FAA "governs the enforcement of written arbitration agreements, including agreements in most employment contracts"). Courts interpret the interstate commerce requirement broadly, in keeping with Congress's full constitutional authority under the Commerce Clause. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (finding the FAA should apply even if there is no "'specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control'").

The Arbitration Agreement unquestionably arises out of Plaintiff's employment with Benchling, and this employment relationship has a substantial connection to interstate commerce. Plaintiff is a Massachusetts resident, and he performed work for Benchling in Massachusetts. (Compl., ¶ 5). Benchling is a Delaware corporation which does business throughout the United States. (Compl., ¶ 6; Benchling Decl., ¶ 4. Benchling's national commercial footprint falls squarely within interstate commerce as contemplated under the FAA. Where, as here, the Arbitration Agreement involves interstate commerce, the FAA governs the Arbitration Agreement. *See Barrasso v. Macy's Retail Holdings, Inc.*, No. 1:15-CV-13098-ADB, 2016 WL 1449567, at *4 n. 3 (D. Mass. Apr. 12, 2016).

Arbitration also is proper under the UAA. *See* Mass. Gen. Laws ch. 251, § 1 *et seq.* The UAA recognizes the validity and enforceability of arbitration agreements except upon grounds for contract revocation. *Id.* Like the FAA, the UAA "express[es] a strong public policy favoring arbitration . . . ." *Town of Danvers v. Wexler Constr. Co.*, 12 Mass. App. Ct. 160, 163 (1981). Indeed, the Massachusetts Supreme Judicial Court has held:

> [U]nless there is positive assurance that an arbitration clause is not susceptible to an interpretation that covers the asserted dispute, or unless no lawful relief can conceivably be awarded by the arbitrator, an order to arbitrate should not be denied.

*Massachusetts Coalition of Police, Local 165 v. Town of Northborough*, 416 Mass. 252, 256, (1993) (quoting *School Comm. of Danvers v. Tyman*, 372 Mass. 106, 113 (1977)). The UAA further provides that an arbitration clause, like that contained in the Arbitration Agreement, "expressed in general terms should be construed as broadly as it was intended." *Town of Danvers*, 12 Mass. App. Ct. at 163; *Qestec, Inc. v. Krummenacker*, 164 F. Supp. 2d 172, 176 (D. Mass. 2001). Whether under the FAA or UAA, Plaintiff must arbitrate his claims.

### B. The Arbitration Agreement Properly Delegates Questions of Arbitrability to the Arbitrator

The Arbitration Agreement expressly provides – and Plaintiff affirmatively agreed – that the arbitrator, *not* courts, must resolve questions of arbitrability. The Supreme Court has "consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, the Arbitration Agreement clearly and unmistakably confers the question of arbitrability upon the arbitrator. Section 2 of the Arbitration Agreement incorporates the Judicial Arbitration and Mediation Services' ("JAMS") Employment Arbitration Rules and Procedures ("JAMS Rules"). (Benchling Decl., Ex. A). Rule 11(b) of the JAMS Rules states that "arbitrability disputes . . . shall be submitted to and ruled on by the Arbitrator."[3] By incorporating the JAMS Rules into the Arbitration Agreement, "the parties have agreed to be bound by rules that clearly and unmistakably provide for the arbitrator to determine arbitrability." *See Tannatt v. Varonis Sys., Inc.*, No. CV 18-12589-JGD, 2019 WL 830482, at *5 (D. Mass. Feb. 21, 2019).

Because there is clear and unmistakable evidence the parties intended to and, in fact did, delegate the arbitrability question to the arbitrator, the Court must "stay [] the action until such arbitration has been had . . . ." 9 U.S.C. § 3; *Vaiano v. United Nat'l Corp.*, 733 F. Supp. 3d 32, 39 (D. Mass. 2024) (citation omitted).

### C.  The Arbitration Agreement is Valid, Binds the Parties, and Encompasses All Claims

Arbitration is mandatory and proper. A party seeking to compel arbitration must show that: (1) a valid arbitration agreement exists; (2) the movant is entitled to invoke the arbitration

---

[3] *See* JAMS Employment Arbitration Rules & Procedures at 7, https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_employment_arbitration_rules-2021.pdf.

agreement; (3) the other party is bound by the arbitration agreement; and (4) the claims asserted are within the scope of the arbitration agreement. *Morales-Posada v. Cultural Care, Inc.*, 141 F.4th 301, 311 (1st Cir. 2025) (citation omitted). Benchling easily satisfies each requirement.

*First*, the Arbitration Agreement is valid and enforceable. "To determine whether a valid agreement to arbitrate exists, federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Okereke v. Uber Techs., Inc.*, No. CV 16-12487-PBS, 2017 WL 6336080, at *5 (D. Mass. June 13, 2017) (quoting *First Options*, 514 U.S. at 944). "A valid and enforceable contract under Massachusetts law[4] exists when the parties agree to 'the material terms' and 'have a present intention to be bound by that agreement.'" *Id.* (citation omitted). "The essential elements for the formation of a contract under Massachusetts law consist of an offer, acceptance, and consideration." *Doe v. Trs. of Bos. Coll.*, 892 F.3d 67, 89 (1st Cir. 2018) (citing *Quinn v. State Ethics Comm'n*, 516 N.E.2d 124, 127 (Mass. 1987)).

Plaintiff knowingly and voluntarily entered into the Arbitration Agreement with Benchling, and valuable consideration supported the Agreement. On May 12, 2021, Plaintiff signed the Arbitration Agreement, expressly "agree[ing] to submit to mandatory binding arbitration any dispute, claim or controversy arising out of or relating to [Plaintiff's] employment with [Benchling]." (Benchling Decl., Ex. A). By signing the Agreement, Plaintiff specifically acknowledged that he "read and underst[ood]" the Arbitration Agreement and "enter[ed] into it freely and voluntarily." (*Id.*). Plaintiff further agreed that arbitration would be the "exclusive

---

[4] Massachusetts choice-of-law rules apply to the validity of an arbitration agreement. *See Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 294 n. 4 (D. Mass. 2016), *aff'd*, 918 F.3d 181 (1st Cir. 2019). Massachusetts has adopted a "functional choice-of-law approach," which focuses on "the interests of the parties, the States involved, and the interstate system as a whole." *Id.* "One guiding principle is the identification of that state which has 'the most significant relationship to the transaction and the parties.'" *Id.* (citations omitted). Here, Massachusetts appears to have the most significant relationship to the Arbitration Agreement as Plaintiff is a Massachusetts resident and performed work for Benchling in Massachusetts. (Compl., ¶ 5). *See id.*; *Okereke v. Uber Techs., Inc.*, No. CV 16-12487-PBS, 2017 WL 6336080, at *5 n. 6 (D. Mass. June 13, 2017).

method by which to resolve any Arbitrable Claims" and "WAIVE[D] ANY RIGHTS [HE] MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRABLE CLAIMS." (*Id.*) (emphases in original). In exchange, Plaintiff received employment with Benchling and Benchling's reciprocal promise to arbitrate. (*See id.*). The Arbitration Agreement is valid and fully enforceable against Plaintiff. *See Bourque v. Rollins, Inc.*, 764 F. Supp. 3d 11, 17 (D. Mass. 2025) (finding parties formed a valid agreement to arbitrate in similar circumstances).

*Second*, Benchling properly invokes the Arbitration Agreement. Indeed, the Agreement *mandates* Benchling and Plaintiff arbitrate all disputes arising from Plaintiff's employment with Benchling. (*See* Benchling Decl., Ex. A, ¶ 1) ("The parties agree that arbitration shall be the *exclusive method* by which to resolve any Arbitrable Claims, and specifically agree that they *will not file a court lawsuit to pursue any Arbitrable Claims*.") (emphases added). *See Design Mark Indus., LLC v. Unbeaten Path Int'l, Ltd.*, No. 1:24-CV-11850-IT, 2025 WL 915771, at *8 (D. Mass. Mar. 26, 2025); *Thornton v. Macy's Retail Holdings, Inc.*, 594 F. Supp. 3d 271, 275 (D. Mass. 2022).

*Third*, Plaintiff is bound by the Arbitration Agreement. By executing the Agreement, Plaintiff acknowledged he "read and underst[oo]d this Agreement and enter[ed] into it freely and voluntarily" and thus must adhere to its terms. (Benchling Decl., Ex. A, ¶ 7). *See Fraga v. Premium Retail Servs., Inc.*, 704 F. Supp. 3d 289, 301 (D. Mass. 2023) (finding plaintiff bound to arbitration agreement because she was a party to it). Moreover, the Agreement expressly provides that it "shall continue to be in full force and effect after [Plaintiff's] employment with [Benchling] has ended," cementing the Agreement's application to Plaintiff's claims. (Benchling Decl., Ex. A, ¶ 4). *See Thornton*, 594 F. Supp. 3d at 275–76 (finding plaintiff bound to arbitration agreement even though she was no longer employed by defendant).

*Fourth*, the Arbitration Agreement unequivocally encompasses the claims in the Complaint. To determine whether Plaintiff's claims fall within the Agreement's scope, courts focus on "the factual allegations underlying the claims in the complaint." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 7 (1st Cir. 2014) (citation and internal quotation marks omitted). Any doubts as to the scope of the arbitration agreement should be "resolved in favor of arbitration." *Id.*

Here, all of Plaintiff's claims fall squarely within the Arbitration Agreement's scope. The Agreement provides that arbitration applies to all claims "arising out of, related to or connected with [Plaintiff's] employment with [Benchling], including but by no means limited to . . . claims based upon any federal, state or local ordinance, statute, regulation or constitutional provision." (Benchling Decl., Ex. A, ¶ 1). "This language indicates an intent to arbitrate a broad scope of claims." *See Thornton*, 594 F. Supp. 3d at 276 (citation and internal quotation marks omitted). Plaintiff's claims – each rooted in his Benchling employment – are precisely those the Arbitration Agreement contemplates. (*See* Compl.). (*See also* Benchling Decl., Ex. A, ¶ 1). Where, as here, the Arbitration Agreement is valid, binding, and encompasses Plaintiff's claims, arbitration is warranted and proper.

### D. Arbitration of Plaintiff's ADA Claims Is Appropriate

Arbitration of Plaintiff's Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, 12203, claims also is proper. (*See* Compl., ¶¶ 38–44; 46–52). When a party relies on the FAA to compel arbitration of an ADA claim, the court "'must undertake a supplemental inquiry'" to determine whether arbitration is "appropriate" under 42 U.S.C. § 12212.[5] *Campbell v. Gen.*

---

[5] 42 U.S.C. § 12212 provides that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under this Act."

*Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005). It is appropriate to compel arbitration of ADA claims where the employer gave employees "some minimal level of notice" that their continued employment would "effect a waiver of the right to pursue the claim in a judicial forum." *Id.* at 555.

Benchling provided Plaintiff with clear and express notice of the arbitration mandate. The Arbitration Agreement provides:

> The parties agree that arbitration shall be the exclusive method by which to resolve any Arbitrable Claims, and specifically agree that they will not file a court lawsuit to pursue any Arbitrable Claims . . . . THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRABLE CLAIMS.

(Benchling Decl., Ex. A, ¶ 1). The definition of "Arbitrable Claims" explicitly includes "claims of discrimination . . . as well as claims based upon any federal, state or local ordinance, statute, regulation or constitutional provision." (*Id.*). This conspicuous disclaimer easily satisfies the "minimal level of notice" the ADA requires. *See Daniels v. Raymours Furniture Co.*, No. CA 13-11551-MLW, 2014 WL 1338151, at *7 (D. Mass. Mar. 31, 2014); *Salvi v. TRW Auto. U.S. LLC*, No. CIV.A. 11-40085-FDS, 2012 WL 274755, at *4–5 (D. Mass. Jan. 30, 2012). Thus, Plaintiff's ADA claims also must proceed to arbitration.

## II. IN THE ALTERNATIVE, THIS COURT MUST DISMISS COUNTS V AND VI PURSUANT TO FEDERAL RULE 12(b)(6)

Even if this Court declines to compel arbitration, Plaintiff's Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*, and Stored Communications Act ("STC"), 18 U.S.C. § 2701, *et seq.*, claims nonetheless fail as a matter of law. Federal Rule 12(b)(6) requires dismissal where a complaint, as here, fails to allege sufficient facts "'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Rather, Fed. R. Civ. P. 8(a) requires the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to the relief" and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted).

Applying this standard, the Court should dismiss Plaintiff's ECPA and STC claims pursuant to Fed. R. Civ. P. 12(b)(6).

### A. Plaintiff Fails to Allege Sufficient Facts to State a Claim Under the Electronic Communications Privacy Act

Plaintiff does not sufficiently plead his ECPA claim. To state a claim under the ECPA, Plaintiff must allege that Benchling "'(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication (5) using a device.'" *Wood v. City of Haverhill*, No. 1:23-CV-12377-JEK, 2024 WL 4189932, at *16 (D. Mass. Sept. 13, 2024) (quoting *In re Pharmatrak, Inc.*, 329 F.3d 9, 18 (1st Cir. 2003)). Plaintiff fails to clear two of the requisite hurdles.

*First*, Plaintiff's conclusory and skeletal claims of "unlawful interceptions" do not constitute an interception of an oral communication under the ECPA. The Act defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). An "oral communication" is "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation." 18 U.S.C. § 2510(2). Congress intended the definition of "oral communication" to

"reflect the Supreme Court's standards for determining when a reasonable expectation of privacy exists." *Lawlor v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 17-CV-117, 2020 WL 1166223, at *13 (N.D. Ill. Mar. 11, 2020) (citations omitted). To determine whether a reasonable expectation of privacy exists, courts have considered "the subject matter of the conversation (e.g., business versus personal)," among other factors. *Aldrich v. Ruano*, 952 F. Supp. 2d 295, 302–03 (D. Mass. 2013), *aff'd*, 554 F. App'x 28 (1st Cir. 2014).

Plaintiff's ECPA claim does not remotely suggest he had a reasonable expectation of privacy in his sales calls, as the ECPA demands. (*See* Compl., ¶¶ 32, 69). The Complaint contains no allegations relating to where the interception took place, whether others could overhear the sales calls, or what, if any, affirmative actions Plaintiff took to protect the calls. *See Aldrich*, 952 F. Supp. 2d at 302–03 (listing factors relevant to determining whether reasonable expectation of privacy exists). Moreover, courts routinely find plaintiffs lack any reasonable expectation of privacy in similar, business-related communications. *See Reynolds v. City & Cnty. of San Francisco*, 576 F. App'x 698, 703 (9th Cir. 2014) (concluding there was no reasonable expectation of privacy where the call was work-related). Plaintiff's ECPA claim should be dismissed on this basis alone. *See Lawlor*, 2020 WL 1166223 at *13 ("Plaintiffs have not alleged facts sufficient to conclude that they had a reasonable expectation of privacy. Thus, Plaintiffs' Wiretap Act claim fails for this reason as well.").

*Second*, and even if Plaintiff sufficiently pled interception of an oral communication, (which Benchling expressly denies), his ECPA claim nevertheless fails because it lacks interception via a "device." The ECPA defines "device" as "any device or apparatus which can be used to intercept a wire, oral, or electronic communication *other than* – any telephone or telegraph instrument . . . being used by the subscriber or user *in the ordinary course of its business*." 18

U.S.C. § 2510(5)(a)(i) (emphases added). The Circuits recognize various renditions of "the general rule . . . that if the intercepted call was a business call, then [defendant's] monitoring of it was in the ordinary course of business." *See Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 582 (11th Cir. 1983); *see also Arias v. Mut. Cent. Alarm Serv., Inc.*, 202 F.3d 553, 559 (2d Cir. 2000); *Amati v. City of Woodstock*, 176 F.3d 952, 954 (7th Cir. 1999). Notably, the First Circuit does not require a valid business purpose to justify the interception. *See Williams v. Poulos*, 11 F.3d 271, 280 (1st Cir. 1993) (finding Section 2510(5)(a) does not "direct courts to conduct an inquiry into whether a legitimate business purpose for monitoring exists").

Because Plaintiff predicates his ECPA claim on sales calls made in the ordinary course of Benchling's business, he necessarily cannot plead Benchling used a "device." (*See* Compl., ¶¶ 32, 69); *Watkins*, 704 F.2d at 582. What is more, Plaintiff concedes Benchling had a legitimate business purpose for allegedly monitoring the sales calls, namely "internal performance monitoring and training," dooming his ECPA claim as a matter of law. (Compl., ¶ 32, 79). *See O'Sullivan v. NYNEX Corp.*, 687 N.E.2d 1241, 1246 (Mass. 1997) (finding legitimate business interest in managing and monitoring the quality of telephone calls made by telemarketers to customers for parallel state statute).

### B. Plaintiff Fails to Allege Sufficient Facts to State a Claim Under the Stored Communications Act

Nor does Plaintiff sufficiently plead his STC claim. The STC "prohibits an individual from (1) intentionally accessing a facility that provides an electronic communication service without authorization or exceeding an authorization to access that facility and thereby (2) obtaining, altering or preventing authorized access to an electronic communication while it is in electronic storage in such a system." *Padmanabhan v. Healey*, 159 F. Supp. 3d 220, 224 (D. Mass. 2016), *aff'd*, No. 16-1159, 2017 WL 3404402 (1st Cir. Jan. 4, 2017).

Plaintiff does not plausibly allege unauthorized access to a facility within the scope of Section 2701(a). Plaintiff alleges Benchling accessed call recordings and related metadata maintained on SalesLoft servers and/or other third-party platforms. (Compl., ¶¶ 77–80). However, the Complaint does not identify (i) the "facility" accessed; (ii) the account or credentials used; (iii) how Benchling's access was "without authorization" or "exceeded" authorization; or (iv) any SalesLoft terms Benchling violated. Plaintiff's naked allegations are thinly veiled legal conclusions insufficient to state a claim. *See Iqbal*, 556 U.S. at 678.

Moreover, Plaintiff's allegations that Benchling was the subscriber and user of the SalesLoft system for sales calls are similarly fatal to his STC claim. (*See* Compl., ¶¶ 32, 69, 77, 79). Access taken with provider-granted credentials falls within the statute's express authorization exceptions. *See* 18 U.S.C. § 2701(c) (granting exceptions to STC's prohibitions "with respect to conduct authorized (1) by the person or entity providing a wire or electronic communications service; [or] (2) by a user of that service with respect to a communication of or intended for that user"). Plaintiff's claims he lacked "notice" and failed to provide "consent" do not plead lack of authorization vis-à-vis the service provider or Benchling as the user. (*See* Compl., ¶¶ 79–80). This alone cements the inadequacy of Plaintiff's STC claim. *See Shefts v. Petrakis*, No. 10-CV-1104, 2012 WL 4049509, at *7 (C.D. Ill. Sept. 13, 2012) (noting the "key issue" under the STC "is 'authorization,'" which can be given by the service provider).

## III. THE COURT SHOULD CONSOLIDATE THE REMAINING CLAIMS WITH THE STATE COURT ACTION

Because Plaintiff's State Court Action and this action involve the same parties, operative facts, and claims for relief, this Court should consolidate the actions. "Consolidation of multiple civil actions is governed by Fed. R. Civ. P. 42(a)(2)." *Piercy v. AT&T Inc.*, 348 F.R.D. 1, 3 (D. Mass. 2024). "When considering a motion to consolidate pursuant to Fed. R. Civ. P. 42, '[t]he

threshold issue is whether the two proceedings involve a common party *and* common issues of fact or law.'" *Cruickshank v. Clean Seas Co.*, 402 F. Supp. 2d 328, 340 (D. Mass. 2005) (quoting *Seguro de Servicio de Salud de Puerto Rico v. McAuto Sys. Grp., Inc.*, 878 F.2d 5, 8 (1st Cir. 1989)) (emphasis added); *see* Fed. R. Civ. P. 42(a)(2) ("If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions").

The Court also must consider "whether the benefits of consolidation outweigh the costs." *Piercy*, 348 F.R.D. at 3 (citing *Seguro*, 878 F.2d at 8). If the cases involve common parties, common questions of law and fact, and efficiency benefits, courts "should allow" consolidation unless the opposing party can establish "'demonstrable prejudice.'" *D.S. Brown Co. v. White-Schiavone, JV*, No. CV 19-30095-NMG, 2020 WL 6363899, at *7 (D. Mass. Oct. 29, 2020) (quoting *Seguro*, 878 F.2d at 8); *Piercy*, 348 F.R.D. at 3.

Where, as here, the Federal Court Action and the State Court Action involve the same parties and share common questions of fact and law, consolidation is warranted and appropriate. In both Actions, Plaintiff is Julian Ross and Defendant is Benchling, Inc. (Compl.; Benchling Decl., Ex. B). At the core of both Actions are Plaintiff's claims (1) Benchling discriminated and/or retaliated against Plaintiff on the basis of disability or use of protected family and medical leave;[6] and (2) Benchling unlawfully invaded Plaintiff's statutory privacy rights.[7] (*See id.*). Indeed, most of the State Court Action's claims mirror those in the Federal Court Action[8] and rely on analogous

---

[6] This question underpins Counts I–IV in the Federal Court Action and Counts I–V and VIII in the State Court Action. (*See* Compl., ¶¶ 38–44, 46–52, 54–59, 61–67; Benchling Decl., Ex. B, ¶¶ 36–42, 44–48, 50–58, 60–67, 69–78, 94–100).

[7] This question underpins Counts V–VI in the Federal Court Action and Counts IV and VI–VIII in the State Court Action. (*See* Compl., ¶¶ 69–75, 77–82; Benchling Decl., Ex. B, ¶¶ 60–67, 80–85, 87–92, 94–100).

[8] While Plaintiff also asserts in the State Court Action claims for wrongful termination in violation of public policy (Count IV), promissory estoppel (Count V), and intention infliction of emotional distress (Count VIII), such claims similarly arise from Plaintiff's employment with Benchling. (*See* Benchling Decl., Ex. B).

state statutory provisions.[9] (*See id.*). Furthermore, both Actions arise from Plaintiff's employment with Benchling. (*See id.*). Plaintiff even acknowledges this in the Complaint: "Plaintiff notes that he has filed a related complaint in Massachusetts Superior Court asserting separate state-law causes of action *arising from the same facts*." (Compl., Request for Stay) (emphases added).

Efficiency considerations similarly favor consolidation. When weighing the costs and benefits of consolidation, courts consider convenience to the parties, judicial economy, and the potential for confusion, delay, or prejudice. *Cruickshank*, 402 F. Supp. 2d at 341 (citation omitted). Here, consolidation best serves judicial economy and party convenience because it avoids "wasteful duplicative proceedings" on "essen[tially] the same complaint." *See In re PRI Automation, Inc. Sec. Litig.*, 145 F. Supp. 2d 138, 140 (D. Mass. 2001). Consolidation will "substantially reduce the judicial time and resources required to manage and try the two cases" as well as "be more cost effective and less time consuming for the parties." *See Cruickshank*, 402 F. Supp. 2d at 341. Moreover, consolidation will not prejudice Plaintiff, as both Actions are "at an early stage and discovery has not yet begun." *See Piercy*, 348 F.R.D. at 3.

Courts have found consolidation was not only permissible but also "meaningful[ly] benefi[cial]" in similar circumstances. *See id.*; *Ochar v. Ameris Bank*, No. 1:24-CV-0995, 2024 WL 3835061, at *2 (E.D. Va. Aug. 15, 2024) (granting motion to consolidate removed state court action and federal court action where "the facts and claims of the two cases [were] identical and where consolidation would result in no risk of prejudice or confusion and would conserve both

---

[9] These include Plaintiff's claims under the ADA and the MFEPA, under the FMLA and the MPFMLA, and under the ECPA and the MWA. *See Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 153 (1st Cir. 2009) ("Chapter 151B is considered the 'Massachusetts analogue' to the federal Americans with Disabilities Act."); *Kliskey v. Making Opportunity Count, Inc.*, 775 F. Supp. 3d 496, 506 (D. Mass. 2025) ("Massachusetts courts typically apply the framework used for retaliation claims under the FMLA."); *O'Sullivan v. NYNEX Corp.*, 687 N.E.2d 1241, 1244 n. 5 (Mass. 1997) ("The Massachusetts wiretap statute 'in major portion matches section for section the provisions of [the Federal statute regulating interception of wire and oral communications].'").

judicial and party resources"). Accordingly, the Court should consolidate the Federal Court Action and the State Court Action under Fed. R. Civ. P. 42(a)(2) and L.R., D. Mass. 40.1(k). *See Piercy*, 348 F.R.D. at 2–3 ("According to the Local Rules of this Court, a motion for consolidation of two or more cases shall be made in the first case filed in the District . . . . Responsibility for ruling on such a motion therefore falls to this session.").

### IV. IT WOULD BE FUTILE TO PERMIT PLAINTIFF LEAVE TO AMEND HIS ECPA AND STC CLAIMS

This Court should dismiss Plaintiff's ECPA and STC claims with prejudice because amendments would be futile. "Courts are not required to grant motions to amend prior complaints where 'the proposed amendment . . . is futile.'" *Johnston v. Box*, 453 Mass. 569, 583 (2009) (quoting *All Seasons Servs., Inc. v. Commissioner of Health & Hosps. of Boston*, 416 Mass. 269, 272 (1993)). A proposed amendment is futile if the new claims could not survive a motion to dismiss. *See Mancuso v. Kinchla*, 60 Mass. App. Ct. 558, 572 (2004) (affirming denial of motion to amend). Where, as here, Plaintiff's ECPA and STC are fundamentally flawed, Plaintiff quite simply cannot allege facts sufficient to withstand dismissal.

### CONCLUSION

For the foregoing reasons, Benchling respectfully requests the Court grant the Motion and issue an Order: (i) compelling arbitration pursuant to the FAA and UAA and staying the Complaint pending arbitration; or, in the alternative, (ii) dismissing Plaintiff's ECPA and STC claims with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), and (iii) consolidating the Federal and State Court Actions pursuant to Fed. R. Civ. P. 42(a)(2).

Dated: October 14, 2025

Respectfully submitted,

**BLETZER & BLETZER, P.C.**

*/s/ Conrad J. Bletzer, Jr.*
Conrad J. Bletzer, Jr., BBO No. 045760
300 Market Street
Brighton, MA 02135
617.254.8900
conrad@bletzerlaw.com

Shawn D. Fabian, Ill. Bar No. 6310637 (*pro hac vice* admission pending)
Katherine Oblak, Ill. Bar No. 6307200 (*pro hac vice* admission pending)
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
321 North Clark St., 32nd Floor
Chicago, Illinois 60654
312.499.6300
sfabian@sheppardmullin.com
koblak@sheppardmullin.com

*Attorneys for Defendant Benchling, Inc.*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF BENCHLING'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO PARTIALLY DISMISS THE COMPLAINT AND TO CONSOLIDATE was electronically filed with the Clerk of the Court and that a copy of the foregoing instrument was sent by first-class U.S. mail, postage prepaid, on October 14, 2025, addressed to the following parties:

Julian Ross
105 East Street, Apt. B
Hadley, MA 01035
jross2l@gmail.com

*/s/ Conrad J. Bletzer, Jr.*