UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:25-cv-30158-MGM

|  |  |
|---|---|
| JULIAN ROSS, *Plaintiff* | ) ) ) ) |
| v. | ) ) |
| BENCHLING, INC. *Defendant* | ) ) ) ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO PARTIALLY DISMISS THE COMPLAINT AND TO CONSOLIDATE**

**Introduction**

1. Defendant Benchling, Inc. seeks to divert this federal civil-rights and privacy action from public judicial scrutiny into confidential arbitration based on a boilerplate clause embedded mid-way through a standardized electronic onboarding packet that Plaintiff was required to "click-through" as a condition of commencing work. The clause was presented only after Plaintiff had accepted his offer of employment, resigned from his prior position, and committed to Benchling. It was never discussed during recruitment, never highlighted as a material term, and never presented as optional. At that stage, Plaintiff had no bargaining power, no ability to proceed without electronic assent, and no meaningful opportunity to consult counsel or decline.

2. Compounding these concerns, the original compensation spreadsheet through which Benchling conveyed and negotiated Plaintiff's offer—an internal Google Sheets document titled "Benchling Offer Illustrator"—has since been deleted from Benchling's Google Workspace for unknown reasons. That document reflected the mutually agreed salary and stock-option terms reached before any DocuSign onboarding materials or arbitration clause were presented. Its

disappearance further underscores that the parties' binding offer and acceptance occurred well before any purported agreement to arbitrate and raises questions regarding Benchling's preservation of contemporaneous evidence.

3. That sequence of events—a post-acceptance, non-negotiable adhesion term imposed by a large technology corporation on an individual employee—renders the purported agreement procedurally and substantively unconscionable under long-settled principles of Massachusetts contract law, which apply with equal force under § 2 of the Federal Arbitration Act ("FAA"). See *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The FAA "does not require parties to arbitrate when they have not agreed to do so," id., and preserves all state-law defenses available to any contract, including lack of assent and unconscionability. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–41 (2011).

4. Even if some form of assent could be inferred, enforcement here would contravene Congress's express statutory framework. The ADA's arbitration provision, 42 U.S.C. § 12212, authorizes arbitration only where "appropriate" and only where the employee's waiver of a judicial forum is knowing and voluntary. See *Campbell v. General Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552–55 (1st Cir. 2005). Benchling's clause—introduced post-offer, buried amid unrelated terms, and never explained—fails that threshold test. Compelling arbitration of statutory discrimination and retaliation claims brought by a pro se litigant with documented hearing- and processing-related disabilities would frustrate the ADA's remedial purposes and effectively deny equal access to justice.

5. Finally, Benchling's effort to consolidate this action with a separate, removed state-law case (No. 3:25-cv-30176-MGM) is procedurally improper and prejudicial. The two cases involve different statutory schemes, remedies, and jurisdictional foundations, and consolidation would

risk entangling a federal ADA/ECPA action with a pending motion to remand an independent Massachusetts-law complaint.

6.     In sum, the arbitration clause was neither knowingly agreed to nor fairly imposed; its enforcement would contravene the ADA's text and purpose; and Benchling's dismissal and consolidation requests are legally and procedurally unfounded. The motion to compel arbitration or to partially dismiss should therefore be denied in its entirety, or at minimum deferred pending limited discovery into the clause's formation and enforceability.

## Legal Standard

7.     The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., embodies a federal policy favoring the enforcement of valid arbitration agreements, but it "does not require parties to arbitrate when they have not agreed to do so." *First Options of Chicago, Inc.* (1995). Arbitration is "a matter of consent, not coercion," and the party seeking to compel arbitration bears the burden of proving both that a valid agreement was formed and that the dispute falls within its scope. Id. at 944; *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir. 2005)

8.     Section 2 of the FAA provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This "saving clause" preserves the full force of state-law doctrines governing contract formation and enforcement—e.g. mutual assent, duress, fraud, and unconscionability—so long as those principles are neutral and do not single out arbitration for disfavored treatment. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333-341 (2011).

9.     Under Massachusetts law, a valid contract requires an offer, acceptance, and a "meeting of the minds" on material terms. *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000). Where assent is obtained through coercion, deceptive presentation, or unilateral

imposition in an adhesion context, the resulting clause is unenforceable. *Feeney v. Dell Inc.*, 465 Mass. 470, 479–80 (2013); *Awuah v. Coverall N. Am., Inc.*, 703 F.3d 36, 43–44 (1st Cir. 2012). Courts applying the FAA must therefore first determine—before referring any matter to arbitration—whether a valid agreement to arbitrate was formed under governing state contract law. *First Options of Chicago, Inc.* at 938 (1995)

10. While federal policy favors arbitration, the presumption of arbitrability arises only after a valid contract is established. Questions concerning whether any agreement was formed are for the Court, not the arbitrator, to decide. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Delegation provisions do not transfer to an arbitrator the threshold inquiry into contract formation itself. See *First Options*, at 944–45; *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Thus, if Plaintiff challenges whether he ever validly assented to arbitration, this Court must resolve that issue as a matter of law before compelling arbitration.

11. Even where an arbitration clause is otherwise valid, the Americans with Disabilities Act authorizes arbitration only "where appropriate and to the extent authorized by law." 42 U.S.C. § 12212. In *Campbell,* the First Circuit held that courts must make a "supplemental inquiry" into whether arbitration of ADA claims is appropriate—requiring, at minimum, clear and unmistakable notice that continued employment or onboarding constitutes a waiver of the right to a judicial forum. 407 F.3d at 552–55. An arbitration provision introduced post-acceptance, buried within boilerplate forms, or otherwise lacking in voluntary consent fails that standard.

12. To the extent Benchling seeks partial dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 19 (1st Cir. 2011). Dismissal is proper only if

the complaint fails to state a facially plausible claim to relief. *Iqbal*, 556 U.S. at 678. Because Plaintiff alleges intentional, undisclosed interception and storage of communications under 18 U.S.C. §§ 2511 and 2701, and retaliation and discrimination under the ADA and FMLA, the pleadings easily satisfy that standard.

**Factual Background**

13.     In March 2021, Benchling's Sales Development Manager Christian Haas-Kwon contacted Plaintiff through LinkedIn to recruit him for a Sales Development Representative position. (**Exhibit A**)

14.     Following several interviews, Plaintiff verbally accepted an offer during a phone conversation with Mr. Haas-Kwon.

15.     Before any DocuSign materials or onboarding packet were provided, Mr. Haas-Kwon shared a Google Sheets document titled "Benchling Offer Illustrator," which displayed proposed salary, equity, and other compensation terms. (**Exhibit E**) Plaintiff and Mr. Haas-Kwon negotiated stock-option quantities directly within that shared spreadsheet. Plaintiff accepted the offer based on those agreed-upon terms, thereby forming a binding employment contract before receiving or assenting to any subsequent DocuSign paperwork.

16.     During the recruitment and offer process, Benchling communicated its initial employment proposal through that shared Google Sheets document listing Plaintiff's salary, equity, and other compensation terms. Plaintiff and Mr. Haas-Kwon directly negotiated the number of stock options using this spreadsheet, and Plaintiff verbally accepted the offer based on those terms and the Google Sheets document (**Exhibit E**) before receiving any DocuSign or electronic onboarding materials. The spreadsheet predated and formed the basis of the parties' agreement.

17. Recently, Plaintiff discovered that this Google Sheet—originally hosted on Benchling's corporate Google Workspace—has been deleted (**Exhibit F**) and is no longer accessible, despite, on information and belief, a litigation hold placed on Benchling on or about November 22, 2021. Google now reports the file as "deleted." The removal of this contemporaneous offer document eliminates direct evidence of the parties' pre-onboarding agreement and supports Plaintiff's contention that the Arbitration Agreement was an after-the-fact, non-negotiable form introduced only after acceptance. To the extent Benchling deleted or failed to preserve this document after the onset of foreseeable litigation, such conduct constitutes spoliation under Fed. R. Civ. P. 37(e) and further undermines the credibility of Benchling's representations regarding contract formation and consent.

## I.  Procedural Unconscionability: Adhesion and Lack of Choice

18. Benchling sought out and approached Mr. Ross through recruitment carried about by Christian Haas-Kwon on LinkedIn; he did not apply or bargain for these terms. (**Exhibit A**)

19. Mr. Haas-Kwon presented a document entitled "Benchling Offer Illustrator" during salary negotiations (**Exhibit E**)—a Google Sheet used to negotiate equity and compensation before any onboarding materials existed. That pre-onboarding spreadsheet has since been deleted by Benchling (see Factual Background, supra). (**Exhibit F**)

20. The arbitration clause at issue was not the product of meaningful agreement. It was introduced after Plaintiff had already accepted employment and salary terms and committed to Benchling, and was embedded mid-way through a 'DocuSign' onboarding packet that could not be completed without agreement. Contemporaneous offer materials reflected in the deleted Google Sheet further confirm that Plaintiff accepted employment terms before any arbitration term was introduced. Under Massachusetts law and First Circuit precedent, that presentation

constitutes a procedurally unconscionable adhesion term lacking any genuine assent.

21. Plaintiff encountered the provision in a standardized DocuSign packet delivered after he had accepted the verbal offer and made arrangements with his prior employer. The arbitration section appears as pages labeled "5" and "6" of a larger employment agreement, with no cover page, bold heading, or option to negotiate or opt out. Completion of the onboarding sequence was mandatory to begin work; failure to click "accept" would have prevented Plaintiff from accessing next steps in Benchling's HR portal or payroll system.

22. Such a post-acceptance, non-negotiable presentation deprives the employee of any realistic choice and is the paradigm of procedural unconscionability. *Feeney,* at 470, 479–80 (2013) ("A contract is procedurally unconscionable where the party had no meaningful opportunity to assent or to reject."); *Awuah*, 703 F.3d at 36, 43–44. (arbitration unenforceable where economic pressure and form presentation deprived plaintiffs of meaningful consent).

23. Massachusetts law requires a "meeting of the minds" on material contract terms. *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000). No such meeting occurred here. The adhesive format, mandatory completion requirement, and lack of contemporaneous explanation or opportunity to seek counsel establish that Plaintiff's "assent" was purely mechanical—an electronic prerequisite to begin employment, not a knowing waiver of federal statutory rights.

24. Because Plaintiff's claims include those arising under the Americans with Disabilities Act, the Court must also apply the "appropriateness" inquiry mandated by 42 U.S.C. § 12212 and *Campbell*. Under *Campbell*, arbitration of ADA claims is permissible only if the waiver of a judicial forum is clear, unmistakable, and voluntary. Benchling's conduct falls far short of that threshold. The arbitration provision was never mentioned until after acceptance, buried in routine

employment paperwork, and unaccompanied by any explanation that it waived the right to bring ADA or FMLA claims in court.

25. The combination of these factors—post-offer imposition, absence of disclosure, non-negotiable format, and the disparity in bargaining power between a global technology company and an individual employee—renders the clause procedurally unconscionable and invalid as a matter of law. See *Awuah*, 703 F.3d at 44 (adhesive arbitration unenforceable where "economic compulsion and unequal bargaining power" negated consent).

26. Benchling may argue that incorporation of JAMS rules delegates "arbitrability" to the arbitrator. But delegation presupposes the existence of an agreement. The Supreme Court has made clear that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court." *First Options*, 514 U.S. at 944. An employee cannot be deemed to have delegated questions of consent to an arbitrator when the very act of alleged consent is in dispute. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Incorporation of JAMS Employment Rules (including Rule 11(b)) cannot establish assent; it presupposes it. First Options, 514 U.S. at 944–45.

27. Benchling's reliance on the JAMS delegation clause therefore fails at the threshold, because Plaintiff's challenge goes to whether any arbitration agreement was formed at all—a question squarely for judicial determination.

28. Taken together, these undisputed facts establish procedural unconscionability and the absence of mutual assent. The purported arbitration clause was imposed as an afterthought to a completed employment agreement, presented through coercive electronic means, and devoid of meaningful notice or voluntary consent. Under both Massachusetts law and the FAA's saving clause, no valid agreement to arbitrate exists and Massachusetts courts refuse to enforce

arbitration clauses obtained through such unequal bargaining (*Feeney*, 465 Mass. at 479–80).

29.     The Google Sheet used to communicate and negotiate the original offer terms is now deleted and inaccessible for unknown reasons. (**Exhibit E, Exhibit F**) Because that file predates any arbitration materials and bears directly on contract formation, Benchling ought to preserve and produce its Google Workspace audit logs, revision history, and any archived copies for litigation purposes. To the extent the file was lost after Benchling's duty to preserve attached, sanctions or an adverse inference under Rule 37(e) may be warranted.

## II. Substantive Unconscionability: Overly Broad and Asymmetric

30.     Even if stipulated that a valid arbitration agreement was formed—which Plaintiff disputes—the clause itself is substantively unconscionable and unenforceable. It operates exclusively for the employer's benefit, limits remedies, imposes procedural burdens on the weaker party, and attempts to strip Plaintiff of statutory protections that Congress and the Massachusetts Legislature deemed nonwaivable.

31.     Benchling's arbitration clause sweeps far beyond what is permissible under either the Federal Arbitration Act or the Americans with Disabilities Act. As presented, it requires arbitration of "any dispute arising out of or related to employment," including torts, statutory claims, and civil-rights violations, while failing to cite examples of the company pursuing its own claims via arbitration (for example, to enforce intellectual-property or confidentiality agreements). This asymmetry converts what the FAA envisions as a bilateral dispute-resolution mechanism into a one-way instrument of sweeping corporate control over an individual.

32.     Such one-sidedness is the hallmark of substantive unconscionability. See *Feeney*, 470, 497–98 (2013) (invalidating arbitration clause that "operates exclusively to the benefit of the drafter and effectively denies consumers a remedy"); *Awuah*, 36, 44 (2012). A clause that

compels arbitration of all employee claims but preserves judicial access for the employer is, by definition, "unreasonably favorable to the stronger party." *Zapatha v. Dairy Mart, Inc.*, 381 Mass. 284, 293 (1980).

33. The clause further requires that disputes be administered under JAMS rules, which impose substantial filing and case-management fees without guaranteeing fee-shifting or relief for indigent claimants. For a pro se individual alleging discrimination and retaliation after losing employment, such upfront costs would effectively close the courthouse door. Massachusetts law squarely rejects arbitration provisions that make statutory claims economically infeasible. *Feeney*, 465 Mass. at 496 ("A court may invalidate an arbitration agreement that renders a claim nonremediable by virtue of cost or other procedural impediments.").

34. The FAA's "liberal policy" favoring arbitration does not require enforcement of an agreement that, in practical effect, eliminates the ability to vindicate substantive rights. See *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) (acknowledging that arbitration is unenforceable where fees are so high as to deter vindication of statutory claims).

35. Benchling's clause prohibits "class, collective, or representative" actions, effectively stripping employees of the procedural mechanism most likely to make low-value but socially significant rights enforceable. That waiver not only disadvantages the individual but frustrates Congress's deterrent purposes in statutes like the ADA and FMLA. The Supreme Judicial Court has recognized that Massachusetts public policy disfavors clauses that "insulate systemic wrongs from collective redress." *Feeney*, 465 Mass. at 500–01.

36. Similarly, the ADA and FMLA contemplate judicial remedies that carry deterrent and precedent-setting value. Converting those public statutes into secret, one-off arbitrations conflicts with both the text and spirit of 42 U.S.C. § 12117 and 29 U.S.C. § 2617, which expressly provide

for public enforcement through the courts.

37.     Where, as here, arbitration would preclude statutory relief mechanisms or the aggregation of similar claims, enforcement is inconsistent with both the FAA's savings clause and fundamental federal policy. See *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 504–05 (2018) (noting that courts remain free to apply generally applicable defenses preserving statutory rights).

38.     The arbitration clause also deprives Plaintiff of fundamental procedural protections inherent in judicial process—discovery rights, evidentiary standards, transparent recordkeeping, and the possibility of appellate review. This deprivation is especially acute given Plaintiff's pro se status and documented hearing-related impairments, which make real-time oral advocacy and unscripted arbitration proceedings particularly difficult.

39.     Federal courts have long recognized that unconscionability may arise not only from substantive terms but from the practical impact of those terms on accessibility and fairness. See *Homa v. Am. Express Co.*, 558 F.3d 225, 232 (3d Cir. 2009) (unenforceable where "procedures foreclose meaningful vindication of statutory rights"). In this context, confidential, high-fee arbitration magnifies the structural imbalance between a represented corporate defendant and an unrepresented, disabled individual seeking statutory redress.

40.     The ADA and FMLA are public-law schemes designed to deter discrimination and retaliation through open, precedential litigation. Likewise, the ECPA and SCA serve privacy interests of national scope by prohibiting unlawful interception and access to stored communications. Adjudicating these statutory violations in a closed arbitral forum would conceal potential systemic misconduct from regulators, other employees, and the public, contravening both federal policy and the FAA's own preservation of "legal or equitable" contract defenses. See 9 U.S.C. § 2; *Warfield v. Beth Israel Deaconess Med. Ctr.*, 454 Mass. 390, 400–01 (2009) ("clear

and unmistakable" agreement before compelling arbitration of civil-rights claims).

41. In short, Benchling's clause does not merely channel disputes into a neutral forum—it restructures the playing field to its exclusive advantage, imposes financial and procedural obstacles that make redress illusory, and attempts to privatize the enforcement of vital public statutes. Such an arrangement is substantively unconscionable and void under both Massachusetts and federal law.

42. Even if the Court were to find that an arbitration agreement was technically formed, the Court should nonetheless decline to enforce it because the clause's overbreadth, asymmetry, and punitive cost structure render it unconscionable and contrary to public policy. Under the FAA's savings clause and the ADA's appropriateness requirement, the provision cannot be sustained.

### III. Public-Policy Exception for Massachusetts Statutory Rights

43. Even if the Court were to conclude that Benchling's clause was validly formed and not unconscionable, arbitration cannot lawfully be compelled where doing so would frustrate the enforcement of public-law rights that Congress and the Massachusetts Legislature intended to be adjudicated under judicial supervision. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (arbitration may not be enforced where "prospective waiver of a party's right to pursue statutory remedies" would occur).

44. The ADA and FMLA are not ordinary private contracts—they are civil-rights statutes that vindicate broad public interests in workplace equality and medical-leave integrity. Congress explicitly conditioned the ADA's arbitration authorization on appropriateness:

45. The First Circuit has interpreted this language to require a "supplemental inquiry" ensuring that arbitration of ADA claims is both knowing and appropriate. *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552–55 (1st Cir. 2005). That standard is not met when

a clause is imposed after acceptance, buried mid-packet, and never explained as a waiver of the right to a public forum.

46.     Moreover, Massachusetts public policy "view[s] with skepticism any attempt to compel arbitration of discrimination claims absent a clear, specific, and voluntary agreement." *Warfield v. Beth Israel Deaconess Med. Ctr.*, 454 Mass. 390, 400 (2009). *Warfield* held that civil-rights statutes demand heightened clarity because they serve deterrent and societal goals beyond private compensation. Those same concerns apply with greater force where, as here, the claimant is a pro se employee asserting disability-based discrimination and retaliation.

47.     The ADA and FMLA rely on public precedent, judicial review, and fee-shifting to deter systemic non-compliance. Private arbitration provides none of these safeguards: proceedings are confidential, decisions are non-precedential, discovery is truncated, and appellate review is nearly nonexistent. For a disabled, unrepresented employee, those limitations effectively extinguish the statute's remedial and deterrent function.

48.     Courts decline to enforce arbitration where it would "prospectively waive a party's right to pursue statutory remedies." *Mitsubishi*, 473 U.S. at 637 n.19; *Paladino v. Avnet Comput. Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (invalidating arbitration clause that undermined Title VII remedies). By mandating private, confidential arbitration of ADA and FMLA claims—without meaningful notice or consent—Benchling's clause functions as precisely such a prospective waiver.

49.     Plaintiff's federal privacy claims under the Electronic Communications Privacy Act (ECPA) and Stored Communications Act (SCA) involve statutory regimes designed to safeguard public confidence in the security of communications. These statutes carry criminal penalties and expressly authorize private enforcement to deter clandestine interception and unauthorized

access. They are not ordinary "terms and conditions of employment," but statutory torts of general applicability that protect the public at large.

50.     Forcing such claims into private, confidential arbitration would defeat their transparency and deterrent purposes by obstructing discovery into systemic recording practices and concealing potentially unlawful surveillance from regulators and other affected individuals. As the Supreme Judicial Court recognized in *Feeney* (2013), courts must ensure that arbitration does not render statutory rights "nonremediable." That principle applies with special force to privacy statutes whose enforcement depends on public accountability.

51.     The FAA's saving clause, 9 U.S.C. § 2, preserves "grounds at law or in equity for the revocation of any contract." When enforcing arbitration would subvert the enforcement design of the Legislature, public-policy principles supply such a ground. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477 (1989). The same reasoning governs here.

52.     The ADA, FMLA, ECPA, and SCA are statutes of broad deterrent scope; their vitality depends on transparent adjudication and precedent. Relegating them to confidential arbitration not only undermines those objectives but also contradicts the ADA's explicit requirement that arbitration occur only "where appropriate." 42 U.S.C. § 12212. On this record, compelling arbitration would not be appropriate—it would be a prospective waiver of public rights.

53.     Because these federal and state statutes embody strong public policies of deterrence, equality, and transparency, any agreement purporting to remove them from judicial oversight is unenforceable. Benchling's arbitration clause would privatize enforcement of laws designed for public accountability, silence potential evidence of systemic misconduct, and deny Plaintiff—and the public—the procedural safeguards Congress intended. For these reasons, even apart from procedural or substantive unconscionability, the Court should decline to compel arbitration of

Plaintiff's ADA, FMLA, ECPA, and SCA claims.

54. The MCAD's protracted delay—approaching the expiration of limitations—triggered Plaintiff's right to a judicial forum under M.G.L. c. 151B § 9. See *Christo v. Boyle Ins. Agency*, 402 Mass. 815 (1988). Arbitration would nullify that statutory remedy and strip Plaintiff of guaranteed legal recourse.

## IV. The Complaint Is Well-Pled and Meets the Federal Plausibility Standard

55. Benchling's Rule 12(b)(6) arguments fail because Plaintiff's Complaint pleads specific, date-stamped facts that, accepted as true, state plausible claims for relief under the ADA, FMLA, ECPA, and SCA. At this stage, the Court must draw all reasonable inferences in Plaintiff's favor and may not weigh evidence or resolve factual disputes. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 19 (1st Cir. 2011).

56. Plaintiff alleges that after engaging in protected medical-leave and accommodation activity, Benchling denied restoration, manipulated accounts, and terminated him within days of requesting PFML leave—conduct plausibly constituting retaliation and interference under the ADA and FMLA.

57. He further alleges that Benchling intentionally configured non-carrier software (Salesloft) to auto-record and store calls with Massachusetts residents without consent, creating durable audio files and internal access logs—conduct satisfying the elements of unlawful interception under 18 U.S.C. § 2511 and unauthorized access under § 2701. These are factual, not conclusory, allegations, and they state viable statutory claims.

58. Because the Complaint provides fair notice of the claims and a factual basis for relief, dismissal is unwarranted. The motion should be denied in its entirety.

## V. The Agreement's Scope Does Not Reach Statutory Privacy Torts

59. Plaintiff's ECPA and SCA claims arise from undisclosed, software-based recording and the durable retention of communications—independent federal statutory torts collateral to any "terms or conditions" of employment. Courts construe arbitration clauses narrowly when the alleged misconduct does not stem from the employment contract itself. See, e.g., *McInnes v. LPL Fin. LLC,* 466 Mass. 256, 261–62 (2013) (independent statutory or tort claims collateral to the employment relationship are not encompassed by generic arbitration provisions).

60. The alleged interceptions and unauthorized access concern Benchling's surveillance architecture and storage practices, not the performance or enforcement of any employment term. These violations implicate the integrity of communications systems used company-wide, not the particular obligations of Plaintiff's job. On that basis, Counts V and VI fall outside the scope of any arguable arbitration agreement, even if one were otherwise valid.

## VI. Waiver by Litigation Conduct

61. Benchling removed this case to federal court, invoked Rule 12(b)(6) dismissal, and sought consolidation—all inconsistent with an intent to arbitrate.

62. Such conduct waives arbitration (*Marie v. Allied Home Mortg.*, 402 F.3d 1, 14 (2005).

63. As the First Circuit held, "the issue of waiver of the right to arbitrate by litigation conduct is presumptively an issue for the court, not the arbitrator." *Marie*, 402 F.3d at 13. Benchling's removal, motion practice, and consolidation requests are precisely the kind of "litigation conduct" that waives arbitration when it prejudices the opposing party. Id. at 14.

64. Accordingly, Benchling has already waived any right it may have otherwise possessed to compel arbitration through its extensive litigation conduct.

## VII. No Dismissal of Counts V or VI

65. The Complaint is well-pleaded, and Counts V and VI are substantiated by specific,

date-anchored factual allegations—including Benchling's deliberate configuration of the Salesloft telephony platform to automatically record all outbound and inbound sales calls between May and September 2022; the storage and indexing of those audio files on non-carrier cloud servers accessible to multiple internal users; and the absence of any disclosure or consent mechanism in Benchling's employee training or onboarding materials. These allegations go well beyond conclusory assertions and directly describe the who, what, when, where, and how of Benchling's unlawful interceptions and unauthorized access, satisfying the plausibility standard under *Twombly* and *Iqbal*.

66.     Defendant's arguments misapprehend both the scope and structure of the Wiretap Act. Benchling conflates "eavesdropping"—the transient act of overhearing a live conversation—with the recording, storage, and later use of those communications. The ECPA, 18 U.S.C. § 2511, distinguishes between real-time "aural acquisition" and the creation and retention of recorded copies, which constitute separate acts of interception and use. See *In re Pharmatrak, Inc.*, 329 F.3d 9, 18–19 (1st Cir. 2003); *Williams v. Poulos*, 11 F.3d 271, 281–82 (1st Cir. 1993). Benchling's alleged conduct—automated capture, digital storage, and internal dissemination of recorded calls through third-party software such as Salesloft—falls outside the narrow "ordinary course of business" exception of 18 U.S.C. § 2510(5)(a)(i), which applies only to monitoring conducted with notice and consent through the telephone instrument itself. See *Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 583 (11th Cir. 1983); *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 742 (4th Cir. 1994).

67.     Likewise, the SCA, 18 U.S.C. § 2701(a), prohibits intentional access to a "facility" providing electronic communication services without authorization. Salesloft's cloud servers constitute such a "facility," see *United States v. Councilman*, 418 F.3d 67, 79 (1st Cir. 2005), and

Benchling's retrieval and review of stored recordings obtained without notice or consent plausibly allege access that exceeded or lacked authorization. Authorization under § 2701(c) is scope-dependent and cannot be resolved at the pleading stage. See *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 114–15 (3d Cir. 2003).

68. Even if the Court analogizes M.G.L. c. 272 § 99 and c. 214 § 1B to their federal counterparts, Plaintiff's allegations plausibly demonstrate interception and unauthorized access. Dismissal would be premature under *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12–13 (1st Cir. 2011), which holds that a complaint need only allege enough facts to make the claims plausible. Plaintiff's state-law privacy and wiretap claims therefore remain independently actionable, and the federal claims under the ECPA and SCA are properly pleaded under settled First Circuit precedent.

## Consolidation is Inappropriate

69. Benchling's request to consolidate this action with the removed state-court case (3:25-cv-30176-MGM) is procedurally improper and would prejudice the Plaintiff. Rule 42(a) permits consolidation only when both cases are properly before the Court. Because jurisdiction over the removed action is actively disputed in Plaintiff's pending Motion to Remand, consolidation would be premature and would effectively deny the remand motion by implication. Moreover, the two actions arise under different statutory schemes—the ADA, FMLA, and ECPA/SCA in this case, and Massachusetts civil-rights and privacy statutes in the other—and will require distinct analyses and remedies. Consolidation would create confusion, not efficiency. See *Cruickshank v. Clean Seas Co.*, 402 F. Supp. 2d 328, 341 (D. Mass. 2005).

70. Civil Action No. 3:25-cv-30158 concerns separate federal issues. Plaintiff's

3:25-cv-30158 complaint and causes of action do not overlap with his State complaint.

71. Civil Action No. 3:25-cv-30158 is an independent action filed under federal-question jurisdiction alleging violations of the ADA, the FMLA, and related statutory claims.

72. Civil Action No. 3:25-cv-30176, by contrast, is a separate matter originally filed in Superior Court, asserting exclusively state-law claims, including privacy violations under M.G.L. c. 272 § 99 and c. 214 § 1B. The two actions involve distinct procedural histories, legal standards, and statutory schemes.

73. Consolidation would improperly merge separate jurisdictional inquiries and procedural stages; one being a removed state case subject to a pending motion to remand, the other a properly filed federal action.

74. Rule 42(a) does not compel consolidation; efficiency and fairness favor denial.

75. Consolidating a removed case still subject to a motion to remand with a separately filed federal action would prejudice Plaintiff and undermine judicial efficiency. The Superior Court action raises core questions of Massachusetts law and administrative exhaustion under M.G.L. c. 151B and c. 175M, while this action raises distinct federal statutory issues. Consolidation before resolving jurisdiction would create duplicative briefing and risk conflicting rulings.

## Conclusion

76. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel Arbitration or, in the Alternative, to Partially Dismiss and to Consolidate. The arbitration clause was imposed after acceptance, without meaningful consent, and is both procedurally and substantively unconscionable. Compelling arbitration of federal civil-rights and privacy claims would contravene Congress's express intent and the public policies underlying the ADA, FMLA, ECPA, and SCA.

77. Plaintiff additionally requests that the Court order Benchling to preserve and produce the "Benchling Offer Illustrator" Google Sheet (and its Google Workspace revision history/audit logs) reflecting Plaintiff's salary and stock negotiations and the agreed upon employment offer.

78. Accordingly, this action should remain in this Court, where Plaintiff's statutory rights can be adjudicated transparently, on the record, and consistent with the principles of due process and equal access to justice.

## Exhibits Attached:

A. LinkedIn recruitment outreach by Benchling (Haas-Kwon)

B. Benchling Arbitration Agreement (p. 5-6)

C. Declaration of Julian Ross (Plaintiff)

D. Benchling's Motion to Compel

E. Email/screenshot showing the "Benchling Offer Illustrator" link

F. Screenshot of the Google notice ("file deleted" / "no longer exists") + any email/link showing the sheet's original share/URL

Dated: October 28, 2025

Respectfully Submitted,
PLAINTIFF, PRO SE

/s/ Julian Ross
Julian Ross
105 East Street
Apt. B
Hadley, MA 01035
(413) 531-9810
jross21@gmail.com
Pro Se Plaintiff