UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:25-cv-30158-MGM

|  |  |
|---|---|
| JULIAN ROSS,  *Plaintiff* | ) ) ) |
| v. | ) ) |
| BENCHLING, INC.  *Defendant* | ) ) ) ) |

**DECLARATION OF JULIAN ROSS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, TO PARTIALLY DISMISS, AND TO CONSOLIDATE**

1.      I am the Plaintiff in this action. I submit this declaration (**Exhibit C**) in support of my Opposition to Defendant's Motion to Compel Arbitration or, in the Alternative, to Partially Dismiss and to Consolidate. The statements below are based on my personal knowledge.

2.      On March 30, 2021, I was personally contacted through LinkedIn by Christian Haas-Kwon, a Sales Development Manager at Benchling, Inc. Mr. Haas-Kwon actively recruited me to join Benchling's sales organization. A true and correct copy of the recruitment message he sent to me on LinkedIn is attached as **Exhibit A** to my Opposition.

3.      During recruitment, interviews, and offer discussions, no one at Benchling mentioned arbitration or any waiver of the right to bring claims in court. Benchling highlighted role responsibilities, compensation, benefits, growth opportunities, and culture—not dispute-resolution terms.

4.      As part of the offer process, Mr. Haas-Kwon shared with me a Google Sheets document titled "Benchling Offer Illustrator." The document was hosted on Benchling's corporate Google

Workspace account and displayed proposed salary, commission structure, equity grants, and other compensation details.

5.    Mr. Haas-Kwon and I discussed and edited that spreadsheet directly during our negotiations. Specifically, we adjusted the proposed number of stock-option units and reviewed total compensation scenarios. Those edits were visible in real time through the shared document, and the final numbers reflected mutual agreement between Benchling and myself.

6.    The Benchling Offer Illustrator spreadsheet was the central medium through which my compensation offer was conveyed and finalized. No arbitration terms, dispute-resolution provisions, or waivers appeared in that document. It contained only compensation-related information.

7.    After I verbally accepted the offer on or about April 28, 2021, the "Benchling Offer Illustrator" sheet remained available to me. Mr. Haas-Kwon told me that the document was personalized to my offer and that I was encouraged to review it as needed going forward. Recently, I attempted to access the same link from my email records and discovered that the file had been deleted. Google now displays a notice stating that the document "deleted" A true and correct screenshot of that notice is attached as **Exhibit F**.

8.    The deletion of this contemporaneous offer document eliminates direct evidence of the pre-onboarding agreement that preceded any DocuSign paperwork. On information and belief, the file was deleted after Benchling had a duty to preserve relevant materials in connection with anticipated litigation. Its loss materially affects evidence of the parties' original contract formation.

9.    I verbally accepted an offer for Sales Development Representative during a telephone conversation with Christian Haas-Kwon, Benchling's Sales Development Manager, on or about

April 28, 2021. (Plaintiff previously stated in the parallel state-court declaration—ECF Filing No. 18, exhibit D—that the verbal offer was received 'on or about April 18, 2021'; this was a typographical error — the correct date was on or about April 28, 2021.)  Immediately thereafter, I provided notice to my then-employer and began making new living and employment arrangements in reliance on the offer and acceptance.

10.    Only after I had accepted the offer did Benchling send me a DocuSign onboarding packet weeks later, which included numerous forms and policy acknowledgments presented as required for beginning employment. The system required that each page be electronically signed before proceeding to the next. No option was provided to decline or modify any terms. The DocuSign workflow would not allow me to advance unless I electronically signed each signature field. There was no mechanism to strike or modify any clause, no "decline" option for the arbitration provision, and no opt-out window was offered or explained by Benchling.

11.    The arbitration clause appeared in the middle of the employment agreement, labeled as pages 5 and 6. It was presented as an inseparable part of the larger document, not as a standalone or negotiable provision. I was not informed that it was optional or that it could be discussed or declined. Defendant's own 'Exhibit 1(A) to the Declaration of Sean Simerly,' filed with its Motion to Compel Arbitration (ECF No. 11-2), confirms this structure: only pages 5 and 6 are included in Benchling's exhibit, while the remaining pages of the agreement are conspicuously omitted. The two pages titled "Arbitration Agreement" were labeled "Page 5" and "Page 6" of a longer employment agreement. The remainder of the agreement was not presented as negotiable, and I was required to accept the packet in its entirety to proceed. (**Exhibit B**)

12.    At the time of signature on or around May 12, I had already accepted Benchling's offer, provided notice to my then-employer, made new living arrangements and was preparing to begin

employment with Benchling on or about June 21. I understood that refusing to sign would prevent me from starting work, and that signing was a condition of employment and necessary for processing the rest of the Docusign agreement. No one at Benchling informed me that arbitration was optional, subject to discussion, or that I could begin work without agreeing to it. My understanding from HR was that signing the complete packet—including the arbitration pages—was a condition of employment and necessary to meet the June 21, 2021 start date.

13.    No one at Benchling discussed or explained the arbitration clause to me. Benchling did not provide me with the JAMS Employment Arbitration Rules, any fee schedules, or any explanation that an arbitrator—rather than a court—might decide threshold issues of arbitrability. The packet did not include copies of any rules; at most there was a bare reference that did not supply the rules themselves.

14.    Throughout my employment, I worked both remotely from my home in Massachusetts and from Benchling's offices located in Boston. All relevant events occurred solely within Massachusetts. I never traveled outside the Commonwealth for any employment purpose whatsoever while working for Benchling. I performed all work using a Massachusetts telephone number and internet connection, and many of my calls and prospecting efforts were focused on Massachusetts-based biotechnology clients and contacts in the Greater Boston/Cambridge area.

15.    In the ordinary course of my role, I regularly called residents and businesses located and based in the United States. Those call participants—and I myself—were not notified that our calls were being recorded or stored by Benchling.

16.    In or around September 2022, my direct supervisor, Sales Development Manager for the Boston office, Christian Haas-Kwon, informed me and other members of my team during an impromptu conversation that sales calls made or received through the "Salesloft" calling

platform were often being recorded and stored on computer servers controlled by Benchling and/or its vendor, Salesloft, as the direction of Director of Sales Development Sean Simerly and senior management. This was the first time I learned that recordings of my calls existed. I had never been informed of, nor asked to consent to, any such recording during my employment. Mr. Haas-Kwon seemed to me concerned and stated, in substance, that Benchling "could be in trouble" if these practices became known to prospects and that the company should have been making proper disclosures and deleting recordings obtained without consent.

17.     At no point during my employment did Mr. Haas-Kwon, Mr. Simerely or any other manager at Benchling disclose, explain, or provide details about how these recording policies or procedures were structured or operated. Nor did Benchling ever seek consent or provide real-time notice that any of my calls were being recorded.

18.     After my termination in September 2022, I pursued my rights through appropriate administrative and judicial channels.

19.     I have documented hearing limitations and auditory-processing challenges. I require written communications and/or live captioning to effectively participate in complex discussions. Phone-only or rapid, unaccommodated proceedings substantially impair my ability to participate fully.

20.     I did not knowingly or voluntarily agree to waive a judicial forum. The arbitration clause was imposed after acceptance, in an adhesive, non-negotiable format, without meaningful notice or opportunity to decline, and with employment contingent upon immediate assent.

21.     I make this declaration to verify these facts and to support my request that the Court deny Defendant's Motion to Compel Arbitration, deny partial dismissal, and deny consolidation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


Dated: October 28, 2025

Respectfully Submitted,

PLAINTIFF, PRO SE

/s/ Julian Ross

Julian Ross
105 East Street
Apt. B
Hadley, MA 01035
(413) 531-9810
jross21@gmail.com
Pro Se Plaintiff