**HALLORAN SAGE**

Robert L. Dambrov
413.735.8004
dambrov@halloransage.com
Admitted in Massachusetts

November 22, 2022

File No. 30338.1

**BY EMAIL TO: Saji@Benchling.com**

Sajith Wickramasekara, Chief Executive Officer
Benchling, Inc.
680 Folsom Street, 8th Floor
San Francisco, CA 94107

Re:   Julian Ross

Dear Mr. Wickramasekara:

This office represents Julian Ross. This letter is being sent regarding your company's wrongful termination of Mr. Ross on or about September 15, 2022.

Mr. Ross began employment with your company on or about June 21, 2021, in the full-time position of Sales Development Representative ("SDR"). His hourly rate as a non-exempt employee was $31.25 and he was also entitled to bonuses related to meeting certain performance metrics. The annual incentive bonus was targeted at $30,000.00, which was not a bonus cap. Additionally, he was granted ISO stock options as part of his employment contract.

In January, 2022, Mr. Ross notified Benchling of his need to take a medical leave of absence due to a health condition. This was approved by Benchling and Mr. Ross applied for and was granted paid leave by the Massachusetts Department of Family and Medical Leave ("DFML"). Mr. Ross provided Benchling with a "Certification of Your Serious Health Condition" form dated February 6, 2022, completed by his health care provider for DFML with start and end of continuous leave from January 24, 2022, to April 18, 2022.

After his return to work, on or about May 11, 2022, Mr. Ross notified Benchling that his health care provider had prescribed intermittent leave when needed. He also provided a letter from his health care provider recommending an accommodation for his working remotely, to help him continue to manage his conditions. Benchling approved of Mr. Ross's accommodation. It was around this time that Benchling had begun transitioning employees from working remotely to working on-site.

Subsequent to these events, Mr. Ross observed that he was not being afforded the same opportunities for job success as his peers. In fact, unlike other members of his SDR team, Mr. Ross was not given any opportunities to attend in-person conferences which is an important and valuable source of sales leads for Benchling. He was also excluded from activities like interviewing job candidates and planning team events. In addition, Mr. Ross was subjected to sudden and unexpected account coverage changes during a fiscal quarter with some of his

Halloran & Sage LLP | 1380 Main Street | Springfield, MA 01103 | 413.781.0750 | Fax 413.733.3042 | halloransage.com
Hartford | Danbury | Middletown | New Haven | New London | Springfield, MA | Washington, DC

7819149v.1 30338/0001

Sajith Wickramasekara, Chief Executive Officer
Page 2
November 22, 2022

accounts and territory being transferred to other Boston SDR team members without explanation.

Notwithstanding, Mr. Ross's performance, after returning from medical leave, during the second fiscal quarter (May – July 2022) resulted in 100% of attainment of his individual and team sales targets. Additionally, around the middle of August 2022, Mr. Ross's manager, Christian Haas-Kwon, acknowledged and commended Mr. Ross's performance during the previous quarter. Mr. Haas-Kwon specifically drew attention to Mr. Ross being responsible for 80% of the team's revenue pipeline attainment for the quarter, vastly eclipsing the performance of others on the SDR team.

Also, around sometime in August, only several weeks before Mr. Ross's termination, Mr. Haas-Kwon told Mr. Ross to begin to plan for a promotion in mid-December 2022, Mr. Ross's 1.5 year mark, and explained how the promotion process would work. Mr. Haas-Kwon repeatedly drew attention to Mr. Ross's exemplary performance in the period quarter.

In early September 2022, Mr. Ross requested a meeting with Emily Kirsch, HR Generalist, which occurred on September 7, 2022. Mr. Ross informed Ms. Kirsch that he would need an additional period of intermittent medical leave in the upcoming few weeks. Ms. Kirsch responded that Benchling would support this leave and reiterated its commitment to supporting his accommodation and intermittent leave. In response to Mr. Ross's inquiry about expectations for the fiscal quarter (August – October) Ms. Kirsch stated Mr. Ross needed to meet and discuss that with his manager, Mr. Haas-Kwon.

On September 15, 2022, only eight days later, Mr. Ross attended his weekly meeting with his manager, Mr. Haas-Kwon, intending to discuss the current quarter, and he was surprised to see Maggie Lee, HR Representative, also in attendance. Mr. Ross was summarily informed his employment was terminated. When Mr. Ross asked for an explanation, Mr. Haas-Kwon would only cite "performance" with no additional explanation. Immediately thereafter, Mr. Haas-Kwan departed the meeting. When Mr. Ross asked Ms. Lee to explain about the performance issues, she responded she did not know but would find out and follow up with more details. To date, Mr. Ross has never been provided with any explanation of the alleged performance issues which caused his termination.

Mr. Ross understands that none of the other seven Boston SDR team members were terminated, despite that he believes at least one, if not more of them, failed to meet 100% of their individual and team targets for the May – July 2022 ("Q2") fiscal quarter. Additionally, none of said team members had anything close to the revenue pipeline for that quarter attributable to Mr. Ross. It is apparent that he was not the worst performer on the team, especially taking into consideration that his absence on medical leave cannot be held against him, and that he was the most senior Boston SDR. Moreover, Mr. Ross is not aware of any other Boston SDR being prevented from attending conferences, participating in interviews and team events, or being subject to sudden territory and account changes.

Mr. Ross maintains that his treatment while employed and his termination was illegal and that, without waiving his rights to assert other claims, he was discriminated and retaliated against because of his handicap, his requests for, and taking of, medical leave, and his requests for

Sajith Wickramasekara, Chief Executive Officer
Page 3
November 22, 2022

accommodation, all in violation of Massachusetts (M.G.L., c. 151B, §§ 1 et seq.) and federal (ADA) fair employment practice laws and the FMLA and Massachusetts PFML. Moreover, Mr. Ross has not been paid all of his bonus due and payable to him, in violation of M.G.L., c. 149, §§ 148 and 150, the latter of which requires mandatory payment of treble damages and payment of reasonable attorney's fees. It should be noted that, in the recent case of <u>Reuter v. City of Methuen</u>, 489 Mass. 465, 184 N.E. 2d 772 (2022), the Supreme Judicial Court held that the treble damages provision in § 150 applies without regard to an employer's intent, and that any payment of wages made after they are due as provided in § 148 must be trebled.

Unless this matter can be resolved amicably soon, Mr. Ross is prepared to commence litigation, for which your company, in addition to being required to offer reinstatement to Mr. Ross, will incur substantial liability for damages, attorneys fees, interest, and costs. Please contact me directly or have your attorney contact me to discuss settlement.

You are reminded that the law prohibits destruction of evidence relating in any way to Mr. Ross's claims. Moreover, you are under a legal duty to preserve any and all relevant evidence and documentation, including computer and electronic communications and other data, files, and logs.

Finally, pursuant to M.G.L., c. 149, §52C, the personnel records law, I hereby request that you provide a copy of Julian Ross's complete personnel records to me. That law requires that these records be provided within five (5) business days from receipt of this letter. In complying with this request, you should recognize that the statutory definition of what constitutes personnel records is quite broad. It is not necessarily information that is stored neatly in a single, manila file in a human resources department. Rather, a "personnel record" is any information or record that "is used or has been used, or may affect or could be used relative to the employee's qualifications for employment, promotion, transfer, <u>additional compensation</u> or <u>disciplinary action</u>." [Emphasis supplied]

In Mr. Ross's particular situation, it is important that you include with his personnel records 1) all communications between and among company management, including, but not limited to documents or communications pertaining to the decision to terminate Mr. Ross's employment; 2) all of Mr. Ross's written and signed commission plans for each fiscal quarter during his employment; 3) all documents regarding meeting and revenue performance numbers for the fiscal quarter May – July 2022 and for the fiscal quarter August – October 2022, and 4) all records and other documents from which Mr. Ross's to date unpaid bonus due and payable to him is determined.

An Employment Information Authorization signed by Mr. Ross is attached.

Finally, my client informs me that he has attempted to exercise his stock option as directed by you but has been unable to do so because when he logs into your stock options vendor, named Carta, he is unable to complete the transaction and a message shows up which states that Benchling has not enabled his ability to exercise the options. Please have this corrected immediately and notify Mr. Ross directly of this.

Sajith Wickramasekara, Chief Executive Officer
Page 4
November 22, 2022

      Thank you for your cooperation.

                                  Very truly yours,

                                  ROBERT L. DAMBROV

RLD/jme
Attachment

cc:    Julian Ross (by email)

        Ricardo Vélez, General Counsel (by email to: ricardo.velez@benchling.com)

EMPLOYMENT INFORMATION AUTHORIZATION

November 22, 2022

I hereby authorize <u>Benchling, Inc.</u> to furnish my attorneys <u>Robert L. Dambrov, Esq.</u> and Halloran & Sage LLP with any and all information and documentation relating to my employment which they may request including but not limited to my wages, benefits, other compensation, hours, job duties, working conditions, dates of employment, reasons for termination, and claims for unemployment compensation including, but not limited to, all personnel records required to be provided pursuant to M.G.L., c. 149, sec. 52C.

_____

{100.1.00031038.DOC;1 }