UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:25-cv-30158-MGM

|  |  |
|---|---|
| JULIAN ROSS, *Plaintiff* v. BENCHLING, INC. *Defendant* | ) ) ) ) ) ) ) ) ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE TO PARTIALLY DISMISS THE COMPLAINT AND TO CONSOLIDATE**

**INTRODUCTION**

Defendant Benchling moves to compel arbitration under a disputed arbitration clause embedded in a post-hoc "Offer Letter" DocuSign form issued May 12, 2021. The arbitration clause was presented after the parties had already reached mutual assent regarding the essential terms of employment and compensation through the shared Google Sheets document titled "Benchling Offer Illustrator."

That "Benchling Offer Illustrator" file—now inexplicably deleted despite litigation holds and timely notice—reflected the operative employment agreement and acceptance between Plaintiff and his manager, Christian Haas-Kwon, well before any arbitration clause was introduced. Accordingly, the arbitration clause cannot bind Plaintiff, both because its formation was procedurally defective and because the original contract evidence supporting mutual assent has been spoliated.

Further undermining Benchling's motion to compel arbitration, Plaintiff's claims do not

merely arise from his employment; they arise from corporate misconduct—including undisclosed internal surveillance, data interception, electronic monitoring, and subsequent spoliation of evidence—that directly impaired the value of his equity interests as a shareholder and exposed the company to potential criminal and classwide civil liability—spanning several classes, including: (1) employees; (2) clients and prospective clients; and (3) shareholders.

These acts implicate the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510–2523 ("ECPA"); the Federal Wiretap Act, 18 U.S.C. § 2511; and the Stored Communications Act, 18 U.S.C. §§ 2701–2712. Each of these statutes was enacted by Congress as a felony-level offense—punishable by five years imprisonment and hefty statutory damages per violation—and they impose liability not only for direct interception but also for any intentional procurement, disclosure, or use of unlawfully intercepted communications.

If, as Plaintiff alleges, Benchling's surveillance systems extended to multiple employees, clients, or platform users, across a range of "one party" and "two party" jurisdictions, the company faces aggregate, classwide, and derivative liability far beyond this individual matter. Such violations inherently implicate corporate compliance, fiduciary oversight, and internal governance—not mere human-resources administration over an individual employee.

The Benchling 2013 Amended and Restated Stock Plan (**Exhibit B**), Option Agreement (**Exhibit C**), Notice of Exercise (**Exhibit D**), and Shareholder Certificate (**Exhibit E**) govern Plaintiff's equity interests. Those instruments expressly select California courts as the exclusive forum and contain no arbitration clause. Because the equities at issue concern fiduciary duty, disclosure, preservation of corporate records, and valuation integrity—not the terms or conditions of employment—the Federal Arbitration Act ("FAA") does not compel arbitration.

## FACTUAL BACKGROUND

A. **Employee Relationship**

Benchling extended an offer of employment to Plaintiff for the position of Sales Development Representative ("SDR") on or about April 28, 2021. After the parties had already reached agreement on the terms of employment, including, but not limited to, compensation and quantity of Plaintiff's stock option grant, Benchling unilaterally attempted—on May 12, 2021, without any notice and without any communication or notice from Plaintiff's manager or the human resources department—to introduce a new arbitration provision, never before disclosed, within Plaintiff's electronic onboarding materials. Mutual assent was reached April 28 2021; agreement finalized on May 10; arbitration language was presented via DocuSign on May 12, 2021—approximately two weeks after mutual assent, after Plaintiff had resigned prior employment and committed to a start date—rendering any purported agreement void for lack of consideration and voluntariness. See, e.g., *Rosenberg v. Merrill Lynch*, 170 F.3d 1, 17 (1st Cir. 1999) Plaintiff disputes the validity and enforceability of this provision in its entirety. In any event, the clause by its own terms applies solely to disputes "arising out of or relating to employment" and does not extend to matters arising from unlawful surveillance or from Plaintiff's status as a shareholder. (**Exhibit E**)

B. **Equity Relationship**

Benchling's Board of Directors approved the grant of stock options under the 2013 Stock Plan, evidenced by a Notice of Stock Option Grant, Stock Option Agreement, and Exercise Agreement. (**Exhibits B - D**) These instruments provide that disputes "shall be governed … by the laws of the State of California" and that "...<u>any litigation shall be conducted only in the courts of California or the federal courts</u>…"

These stock option and shareholder agreements contain no arbitration clause and define a separate and distinct corporate relationship between Benchling and its shareholders.

Notably, the Notice of Exercise (**Exhibit D**) explicitly provides: "Nothing in this Agreement shall affect in any manner whatsoever the right or power of the Company, or a parent, subsidiary or affiliate of the Company, to terminate Purchaser's employment or consulting relationship, for any reason, with or without cause."

This clause confirms that Plaintiff's shareholder rights under the Stock Plan exist independently of, and are unaffected by, his employment relationship. Benchling's own drafting thus acknowledges that the equity relationship is a distinct contractual nexus—subject to its own governing law and forum-selection clause, and outside the scope of any employment-based arbitration provision.

### C. Corporate Misconduct, Spoliation, and Governance Failures

Plaintiff alleges that Benchling maintained or permitted covert electronic monitoring and data-interception systems in violation of the ECPA and related federal statutes. These surveillance activities—if confirmed—constitute felonies under federal law and expose the company to civil actions by each affected individual under 18 U.S.C. § 2520 as well as class actions.

Plaintiff further alleges that, after he raised these issues, critical evidence reflecting the operation of such monitoring systems—including audio recordings, internal logs, audit trails, and shared documents—may have been deleted, withheld, or rendered inaccessible. Benchling's counsel has since admitted that a litigation hold was not issued until "in December 2022," though the duty to preserve attached no later than November 22, 2022, if not around the time of Plaintiff's termination—around and between the dates of September 15 and September

23—when the company had notice of Plaintiff's allegations, refusal to sign his severance agreement, and pending disputes.

Litigation hold attaches when litigation is reasonably anticipated. See *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003) Benchling refuses to provide adequate assurances that litigation hold was properly attached and executed. Such conduct constitutes potential spoliation of evidence, implicating Fed. R. Civ. P. 37(e) and raising serious questions of corporate integrity, litigation hold compliance, and Board oversight.

For a publicly-oriented technology company whose enterprise value depends heavily upon data stewardship and ethical compliance, the destruction or concealment of evidence regarding unlawful surveillance is not a mere procedural violation—it is a governance failure with direct implications for shareholders. By impairing the company's ability to verify and remediate internal misconduct, the spoliation of records materially increases legal exposure and public relations risk, and thus diminishes the fair-market value of shareholder equity, including Plaintiff's own holdings. (**Exhibit E**)

These combined acts—unlawful interception, nondisclosure, and subsequent spoliation—constitute a pattern of fiduciary breach implicating Benchling's directors, officers, and counsel.

## ARGUMENT

A. **Employee Relationship**

An employee arbitration clause, insofar as it is valid and conscionably enforced, binds only disputes within the contract containing it. *Goldman v. KPMG LLP*, 92 F. App'x 983 (5th Cir. 2004). The Stock Plan, Option, Exercise and Shareholder Agreements create a separate and distinct contractual nexus establishing ownership rights governed by corporate and fiduciary law.

The disputed arbitration clause cannot unilaterally extend to those independent instruments nor contravene Plaintiff's rights and standing as a shareholder of Benchling, Inc.

Defendant's own drafting confirms this separation: the Offer Letter expressly states that any equity grant will be subject to the "Company's stock plan … and applicable stock option agreement," not the employment contract itself. This language establishes that the equity relationship is distinct, board-approved, and governed by separate legal frameworks.

### B. Forum Selection Control Clause for Shareholders

The Stock Option Agreement's governing-law and forum-selection clause—specifying California state or federal courts—is mandatory, not permissive. Under *Atlantic Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49 (2013), such a clause supersedes inconsistent arbitration or venue provisions in collateral agreements.

Benchling deliberately omitted arbitration language from its equity instruments, signaling an intent that shareholder disputes be adjudicated in open court, where fiduciary and compliance issues can be addressed with appropriate transparency.

Benchling's own Notice of Exercise confirms that the equity relationship is independent from employment, expressly stating that "[n]othing in this Agreement shall affect in any manner whatsoever the right or power of the Company … to terminate Purchaser's employment." This textual separation reinforces that shareholder disputes fall outside the scope of any employment arbitration clause.

### C. Plaintiff's Claims Sound in Corporate Governance, Not Employment

Plaintiff's causes of action—including violations of the ECPA, Wiretap Act, and Stored Communications Act, as well as common-law privacy and fiduciary claims—concern Benchling's systemic data-monitoring and record-retention failures, not individual HR

grievances. These are corporate-level harms.

The alleged conduct demonstrates a failure of oversight and disclosure by Benchling's officers and directors, violating duties owed to shareholders. Courts consistently hold that equity-holder and fiduciary-breach claims fall outside employment arbitration. *In re P3 Health Grp. Holdings, LLC Litig.*, 2022 WL 621629 (Del. Ch. 2022); *Cheng v. PayPal Holdings, Inc.*, 2021 WL 5161742 (N.D. Cal. 2021).

If Benchling's monitoring or deletion practices extended to other employees or customers, the exposure would be enterprise-wide and potentially class-action in scope—an inherently corporate risk directly affecting valuation and investor confidence.

### D. Spoliation and Fiduciary Implications

Benchling's alleged deletion or concealment of ESI after notice of dispute constitutes potential spoliation of evidence under Fed. R. Civ. P. 37(e). When committed by officers or agents acting within the scope of employment, such conduct implicates the Board's fiduciary duty of oversight recognized in *Marchand v. Barnhill*, 212 A.3d 805 (Del. 2019). Under Delaware's internal-affairs doctrine, disputes involving a corporation's internal governance, record-keeping, and director oversight obligations fall under the exclusive province of judicial—not arbitral—supervision. *McDermott v. Lewis*, 531 A.2d 206, 214–15 (Del. 1987).

For shareholders, spoliation is not simply an evidentiary issue—it is a corporate-governance violation and raises serious concerns about fiduciary duty to protect shareholders' interests. The duty of loyalty requires directors to preserve the corporation's records and legal position; the destruction of key evidence concerning potential felonious conduct breaches that duty. Such conduct justifies judicial—not arbitral—review, because arbitrators lack authority to impose corporate-level sanctions or equitable relief such as

preservation orders, forensic audits, or derivative remedies.

### E. Public-Policy and Statutory Considerations

Congress deliberately classified unlawful electronic surveillance as a felony offense, underscoring the public interest in deterring and punishing such misconduct. The statutes' private rights of action exist precisely because such violations threaten the integrity of communications across entire enterprises.

As the Supreme Court made clear in *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985), statutory claims are subject to arbitration only where Congress has not evinced an intent to preclude it; here, the criminal (felony) nature of the Wiretap and Stored Communications Acts and their deterrent public-policy objectives weigh heavily against private, confidential arbitration. See also *McInnes v. LPL Fin., LLC*, 466 Mass. 256, 265 (2013) (Massachusetts courts construe arbitration clauses narrowly where public policy favors judicial oversight of statutory enforcement).

Forcing these issues into confidential arbitration would undermine both the public-policy objectives of federal criminal statutes and the internal-affairs doctrine of Delaware and California, which favor judicial supervision over fiduciary breaches. Equity participants and the investing public alike have an interest in transparent adjudication of conduct that, if proven, constitutes felony-level corporate misconduct.

### F. The FAA Does Not Mandate Arbitration of Non-Consensual or Ultra Vires Subjects

The FAA enforces arbitration only where parties clearly and unmistakably agreed to it. 9 U.S.C. § 2. Arbitration is "a matter of consent, not coercion." *AT&T Techs. v. Commc'ns Workers*, 475 U.S. 643, 648 (1986).

In the First Circuit, electronic or click-through assent requires clear, conspicuous notice

and an unambiguous manifestation of intent to agree. *Cullinane v. Uber Techs.*, 893 F.3d 53, 62–63 (1st Cir. 2018).

Not only does Plaintiff dispute the validity of Benchling's asserted employment arbitration clause, but Benchling's equity instruments and agreements omit any such clause altogether. Ambiguities in overlapping contracts are construed against the drafter. *Volt Info. Scis. v. Bd. of Trustees,* 489 U.S. 468 (1989). All of Benchling's attempts to compel arbitration are therefore moot.

Further, because the Stock Plan and Option Agreement contemplate strictly judicial litigation, and because the alleged misconduct includes potential felony offenses, fiduciary breaches, and spoliation—all matters well beyond the scope of private arbitration—the FAA does not compel arbitration here.

## **CONCLUSION**

Benchling's motion should be denied. The disputed arbitration clause in the May 10, 2021 onboarding bundle governs only traditional employment matters. Plaintiff's claims—arising from Benchling's alleged electronic surveillance, statutory violations, spoliation of evidence, and corporate nondisclosure—concern fiduciary duties, governance integrity, and shareholder value, all governed by distinct instruments designating judicial forums, as set forth in the 2013 Amended and Restated Stock Plan, Stock Option Agreement, and Notice of Exercise.

Plaintiff is a shareholder of Benchling, Inc., having exercised stock options pursuant to those equity agreements. Those instruments—each approved by the Board and governed by California and Federal law—contain no arbitration clause and expressly preserve the independence of the shareholder relationship from employment. The "No Employment Rights" clause in the Notice of Exercise confirms that equity ownership is a distinct legal status,

unaffected by at-will employment or its termination.

Because Plaintiff's claims arise from his capacity as a shareholder and from corporate-level misconduct—including violations of the ECPA, fiduciary breaches, and spoliation of corporate records—the FAA does not compel arbitration. Judicial adjudication is the only forum capable of addressing these intertwined statutory and fiduciary issues with the transparency and remedial authority they require.

Dated: November 10, 2025

                                      Respectfully Submitted,

                                      PLAINTIFF, PRO SE

                                      /s/ Julian Ross

                                      Julian Ross
                                      105 East Street
                                      Apt. B
                                      Hadley, MA 01035
                                      413-531-9810
                                      jross21@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed through the

Court's CM/ECF system, which will send notice electronically to all counsel of record.

                        PLAINTIFF, PRO SE

                        */s/* Julian Ross

                        Julian Ross
                        105 East Street
                        Apt. B
                        Hadley, MA 01035
                        (413) 531-9810
                        jross21@gmail.com
                        Pro Se Plaintiff